UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SUSAN LAFAYE, ET AL | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO.:  20-41 |
| | * | |
| THE CITY OF NEW ORLEANS | * | SECTION: "E"  (3) |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *  * * * * * * * * * * * * * * * * * * * * * * * *

## FIRST SUPPLEMENTAL AND AMENDING COMPLAINT – CLASS ACTION

### Introduction and Nature of the Action

In January of 2008, City of New Orleans ("the City") enacted and began enforcing Code of Ordinances of the City of New Orleans Chapter 154, Article XVII, Sections 154-1701 through 154-1704, known as the Automated Traffic Enforcement System ("ATES").  In March of 2010, a group of putative class plaintiffs, led by Joseph R. McMahon, III, filed a class action lawsuit against the City in the Civil District Court ("CDC") for the Parish of Orleans challenging the ATES ordinance under local, state and federal law.  In 2012, several class challenges were consolidated into the *McMahon* case.  Class certification was granted on February 8, 2017.

On November 15, 2017, the trial court in CDC granted partial summary judgment in favor of "Subclass 1," finding that the City's Department of Public Works had no legal authority under the City's Home Rule Charter to enforce the ATES traffic ordinance, thus all ATES fees and fines

collected by the City from ATES tickets issued from January 1, 2008 through November 3, 2010,[1] were collected under an invalid ordinance such that those fees and fines were never owed. The trial court's Judgment, signed on February 21, 2018, ordered the City to return immediately the plaintiffs' property:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the defendant, the City of New Orleans, shall immediately refund to the Class Plaintiffs Subclass 1 all ATES fines and fees paid by the Class Plaintiffs Subclass 1 for ATES tickets issued for the period January 1, 2008, through November 3, 2010, in the amount of $25,612,690.32, together with judicial interest.[2]

The City appealed the trial court's Judgment of February 21, 2018, to the Louisiana Fourth Circuit Court of Appeal.  That Court, in a decision dated September 4, 2019, affirmed the trial court's Judgment, concluding the immediate return of plaintiffs' property was the correct ruling:

> Because the ATES was an invalid ordinance, without effect, until it was placed under the NOPD on November 4, 2010, the trial court correctly ruled for the immediate return of the $25,612,690.32 in ATES fees and fines collected from tickets issued to Subclass 1 prior to that date. Because the ordinance was invalid, no one in Subclass 1 ever owed any of those ATES fine payments to the City. Accordingly, we affirm the trial court's granting of the partial summary judgment in favor of the plaintiffs.[3]

---

[1] On November 4, 2010, the City's Council passed an amended ATES ordinance placing its enforcement under the NOPD, which brought the ordinance into compliance with the City's Home Rule Charter concerning traffic law enforcement.

[2] *See* Exhibit 1, Judgment of February 21, 2018 in favor of partial summary judgment for Subclass 1 plaintiffs in *Joseph R. McMahon, III, et al v. City of New Orleans*, CDC No. 10-2196 (c/w 10-9732, c/w 11-8553), Ad Hoc Division - Judge Burns (2/21/2018).

[3] *See* Exhibit 2, *Joseph R. McMahon, III, et al v. City of New Orleans*, 2018 CA 0842 (c/w 2018 CA 0843, c/w  2018 CA 0844, c/w 2018 CA 0845, c/w 2018 CA 0846) (La.App. 4 Cir. 9/4/2019), 280 So.3d 796; *cert. denied* 2019-CC-01562 (La. 11/25/2019), 283 So.3d 498.

The City appealed the Court of Appeal's ruling of September 4, 2019, to the Louisiana Supreme Court.  The Louisiana Supreme Court, however, denied writs on November 25, 2019.[4] The Judgment of February 21, 2018, against the City is now final.

Since November 25, 2019, the City has refused to return immediately the Putative Class Plaintiffs' property as ordered by the Louisiana Fourth Circuit Court of Appeal and the trial court in CDC.[5]  In so refusing, the City has held out the *McMahon* judgment as a "money judgment" subject to a budgetary appropriation:

> [Mayor] Cantrell's office responded to questions about the latest massive judgment with a statement.
>
> "All state court judgments, including the referenced judgment, will be paid subject to an appropriation."[6]

By treating the *McMahon* final judgment as a state court "money judgment" rather than an order to return immediately plaintiffs' private property, the City seeks the protections of the Louisiana Constitution of 1974, Article XII, §10 "Suits Against the State." sub-part(C), which provides:

> C) Limitations; Procedure; Judgments. Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political

---

[4] *See Joseph R. McMahon, III, et al v. City of New Orleans,* 2019-CC-01562 (La. 11/25/2019), 283 So.3d 498.
[5] *See* Exhibits 1 - 3.
[6] *See https://www.nola.com/news/article_4c02536e-112a-11ea-a585-3f62fc27add2.html*, attached as Exhibit 4, pp. 4-5.

> subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.[7]

Although the *McMahon* judgment includes a dollar amount, it is a not a "money judgment" for the payment of "recoverable damages" to the Putative Class Plaintiffs based in tort or contract, as contemplated by Article XII, § 10(C) above; instead, the *McMahon* judgment orders a refund/return of the Putative Class Plaintiffs' property.  For instance, if the City, while enforcing the ATES ordinance for the first three years, had instead impounded Putative Class Plaintiffs' vehicles as punishment under the ordinance, and was then ordered to return the impounded vehicles to the Putative Class Plaintiffs because the ATES was never a legal ordinance, the City could not refuse to return immediately the impounded vehicles based upon the protections of Article XII, §10(C) of the Louisiana Constitution of 1974.

The fact that the Putative Class Plaintiffs' property illegally seized by the City is in the form of the money amount quantified in the *McMahon* judgment rather than corporeal property is of no moment; the City's refusal to return immediately Putative Class Plaintiffs' private property, as ordered by the final judgment in *McMahon*, amounts to a taking in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States of America, as the City has neither returned the Putative Class Plaintiffs' property pursuant to the judgment nor provided any just compensation in its place.

Putative Class Plaintiffs, on behalf of themselves and all others similarly situated and through undersigned counsel, seek the vindication of, and enforcement of, their constitutional rights on a class-wide basis, ordering the City to return immediately Putative Class Plaintiffs' property as

---

[7] Louisiana Constitution of 1974, Article XII, Section 10.

4

directed in the *McMahon* judgment, as said property is being withheld by the City, without just compensation, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States of America.

**Jurisdiction and Venue**

1.      This is a civil rights action arising under 42 U.S.C. § 1983 and § 1988, and the Fifth and Fourteenth Amendments to the Constitution of the United States of America.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1332.

2.      Venue is proper pursuant to 28 U.S.C. § 1391.

**Parties**

3.      Putative Class Plaintiffs are Susan Lafaye, Lisa Picone and Inez Victorian, all persons of the full age of majority and residents of Louisiana, on behalf of themselves and all persons similarly situated and previously recognized as class members of "Subclass 1" in the state court class action case of *Joseph R. McMahon, III, et al v. City of New Orleans*, 2018 CA 0842 (c/w 2018 CA 0843, c/w  2018 CA 0844, c/w 2018 CA 0845, c/w 2018 CA 0846) (La.App. 4 Cir. 9/4/2019), 280 So.3d 796; *cert. denied* 2019-CC-01562 (La. 11/25/2019), 283 So.3d 498.[8]

4.      Made defendant herein is **The City of New Orleans** ("the City"), a political sub-division of the State of Louisiana.

5

**<u>Factual Background, Procedural History and Legal Basis</u>**

5.      From January 1, 2008 through November 3, 2010, the Putative Class Plaintiffs, along with all those similarly situated and recognized as "Subclass 1" in the *McMahon* case, paid fees and fines to the City under the illegal ATES ordinance.[9]

6.      None of the Putative Class Plaintiffs, nor anyone else in Subclass 1, has had his or her property returned to them by the City, despite the final judgment in *McMahon* that ordered the City to immediately refund/return the Putative Class Plaintiffs' property taken from them under the illegal ATES.

7.      Upon information and belief, instead of returning immediately the Putative Class Plaintiffs' private property to them as ordered, or providing just compensation in its place, the City treats the final judgment in *McMahon* like a "money judgment" for tort or breach of contract damages,[10] **which it is not**, and continues to withhold the Putative Class Plaintiffs' property from them.

8.      The Takings Clause embodied in the Fifth Amendment of the Constitution of the United States of America requires that private property cannot be taken for public use, unless "just compensation" is paid to the property owner.[11]  The Takings Clause is applicable to the states by way of the Fourteenth Amendment.[12]

9.      Under Louisiana law, one's money is recognized as private property.[13] Federal law likewise holds that money is private property,[14] thus the first prong of the Takings Clause is

---

[8] *See* Exhibit 2.
[9] *See* Exhibits 1, 2.
[10] *See* Exhibit 4.
[11] U.S. CONST. amend. V.
[12] U.S. CONST. amend. XIV.

satisfied herein by the City's ongoing refusal to return the Putative Class Plaintiffs' private property, as ordered in *McMahon*.  Because the City refuses to return to the Putative Class Plaintiffs' their private property, which is also being withheld without just compensation, an unconstitutional taking has occurred.  Moreover, the City is under an obligation to return **immediately** the property, or to **immediately** provide just compensation in its place, under the Fifth Amendment.[15]

10.     Putative Class Plaintiffs filed this suit to force the City to return immediately the Putative Class Plaintiffs' private property, as ordered in the *McMahon* judgment, because the City's continued failure to return immediately the Putative Class Plaintiffs' property as ordered in *McMahon* amounts to a taking in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.  Moreover, the City failed to provide the Putative Class Plaintiffs with any just compensation to satisfy their taken property.

11.     The Putative Class Plaintiffs are clearly entitled to the return of their property or just compensation, as the final judgment in *McMahon* issued by the trial court in CDC, and affirmed by the Louisiana Fourth Circuit Court of Appeal, with writs denied by the Louisiana Supreme Court, was rendered to force the City to return immediately the Putative Class Plaintiffs' property collected under an illegal ATES ordinance.  However, the City persists in its refusal to return immediately the Putative Class Plaintiffs' property, relying upon La.Const.Art. XII, § 10(C) to argue that the

---

[13] Louisiana Constitution of 1974, Article I, § 4.
[14] *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 172, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998); *see also Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164, 101 S.Ct. 446, 452, 66 L.Ed.2d 358 (1980).
[15] As Justice Thomas explained in his concurrence in *Knick v. Twp. of Scott*, 139 S.Ct. 2162, 2180, 204 L.Ed. 558 (2019), the Fifth Amendment "makes just compensation a "prerequisite" to the government's authority to "tak[e] property for public use.""

*McMahon* final judgment is a "money judgment" subject to some future, arbitrary budgetary appropriation at the City's discretion.[16]

12.     The Louisiana Supreme Court has repeatedly held that La.Const.Art. XII, § 10(C) serves as an "unequivocal, self-expressing waiver of sovereign immunity as to suit and liability **in contract and tort cases**."[17]  Putative Class Plaintiffs' final judgment in *McMahon* orders a refund from the City, *i.e.*, a return of private property taken by the government; **it does not provide "recoverable damages" in breach of contract or in tort**.[18]

13.     To allow the fact that the City has not "officially" asserted that it will not return immediately the Putative Class Plaintiffs' property so as to prevent the Putative Class Plaintiffs herein from collecting just compensation would undermine the entire premise behind the Takings Clause, the aim of which is to prevent government "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."[19]  If the City is allowed to circumvent or sidestep the Takings Clause by claiming it never "officially" stated that it would not return immediately the Putative Class Plaintiffs' property, then future plaintiffs in takings cases could be prevented from recovering just compensation so long as the defendant never makes such an affirmative statement.  In this case, it is also clear that just compensation has been denied by the City, which still possesses and withholds Putative Class Plaintiffs' private property, thus a Fifth Amendment violation has occurred.

---

[16] *See* Exhibit 4.
[17] *See Fulmer v. State*, 10-2779 (La. 7/1/2011), 68 So.3d 499, 503 [Emphasis added]; *Jacobs v. City of Bunkie*, 98–2510 (La. 5/18/99), 737 So.2d 14, 22.
[18] *See* Exhibits 1 - 3.
[19] *Armstrong v. U.S.*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed. 2d. 1554 (1960).

14.     The doctrine of *res judicata* does not bar Putative Class Plaintiffs' claims in this case, as the preclusive doctrines of true *res judicata*/claim preclusion and collateral estoppel/issue preclusion do not apply.

15.     True *res judicata* treats a final judgment as the full measure of relief between the same parties on the same "claim" or "cause of action."[20]  Although the Putative Class Plaintiffs and the City are the same parties as in *McMahon*, no claim between them based on the Takings Clause of the Fifth Amendment was adjudicated in any state court, thus *res judicata* does not bar this Honorable Court from hearing the claim.[21]  Because this Honorable Court must review the *res judicata* analysis under Louisiana law, per the Full Faith and Credit Clause, two prerequisites must exist in support of imposing the *res judicata* bar: (1) the claim must "arise out of the transaction or occurrence that was the subject of the state court litigation" and (2) the claim did "exist at the time of the prior state court judgment." *See Lafraniere Park Foundation v. Broussard*, 221 F.3d 804, 809 (5th Cir. 2000) (citing *Kelty v. Brumfield*, 633 So.2d 1210, 1215 (La. 1994)).  Neither is present in the case subjudice.

16.     In this case, the taking complained of by Putative Class Plaintiffs **did not arise** until the City refused to return immediately the Putative Class Plaintiffs' property, following the final judgment in *McMahon* on November 25, 2019.[22]  Putative Class Plaintiffs' takings claim at bar arose thereafter as a result of the City's refusal to return immediately Putative Class Plaintiffs' property, hiding behind sovereign immunity provided by the Constitution of the State of Louisiana's Article XII, § 10(C) concerning judgments for "recoverable damages" against the State and its

---

[20] *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach. Inc.*, 575 F.2d 530, 535 (5th Cir. 1978).
[21] *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 426 (5th Cir. 2000).

political subdivisions.  Moreover, the instant complaint **could not have arisen** out of the *McMahon* court's determination that the ATES ordinance was illegal under the City's Home Rule Charter through November 3, 2010, **since all of the facts necessary to constitute the instant takings claim had not yet transpired**.

17.     An additional prerequisite to imposing the jurisdictional bar of *res judicata* is that the action complained of in this case must have existed "at the time of the prior state court judgment."[23]  As shown immediately above, the taking complained of herein did not exist at the time of the *McMahon* filings nor at the time of the *McMahon* final judgment, as at that time, the City had not yet refused to honor the final judgment ordering the return the Putative Class Plaintiffs' private property.  The only conceivable way *res judicata* could serve as a bar to this Honorable Court hearing this takings claim is if the Putative Class Plaintiffs could have brought their claim in the *McMahon* case that the City refused to return their property as ordered by the final judgment of November 25, 2019.  Due to the principle of ripeness/prematurity, the Putative Class Plaintiffs **could not** assert such a claim in *McMahon* at the time (as no such claim existed until *after* the determination that the ATES was illegal for three years became a final judgment on November 25, 2019), so the Putative Class Plaintiffs first had to pursue their remedies in challenge to the legality of the ATES in state court.

18.     This Honorable Court can easily reject the contention that *res judicata* bars the instant case from being heard on the theory of collateral estoppel, as the essential elements necessary to prove collateral estoppel are that the issues before this Honorable Court were either

---

[22] *See* Exhibit 4.
[23] *Lafraniere Park Foundation v. Broussard*, 221 F.3d 804, 809 (5th Cir. 2000).

actually decided or "essential to the judgment" in a previous suit between the same parties on a different claim.  These elements are clearly not met in this case since none of the Louisiana state courts ever determined that the fee and fine money illegally collected by City under the invalid ATES ordinance amounted to an unconstitutional taking.[24]

19.     For the reasons given in Paragraphs 14-18, the doctrine of *res judicata* does not, and indeed cannot, serve as a jurisdictional bar for this Honorable Court to hear the instant case, as the Putative Class Plaintiffs' takings claim herein did not exist at the time of the *McMahon* final judgment and did not arise our of the same occurrence or transaction as the prior claims therein. Moreover, the instant takings claim was not and **could not have been brought** in the *McMahon* state court at the time the legality of the ATES claim was being adjudicated.

20.     Putative Class Plaintiffs' takings claim is not barred by the *Rooker-Feldman* doctrine.  The *Rooker-Feldman* doctrine bars a party who has lost her case in state court "from seeking what in substance would be appellate review of the state judgment in a United States district court."[25]   Under *Rooker-Feldman*, this Honorable Court can maintain jurisdiction because the present takings claim is not "inextricably intertwined" with the prior *McMahon* final judgment.[26]

21.     The Supreme Court has stated that a "federal claim is inextricably intertwined with the state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it."[27] The success of the Putative Class Plaintiffs' takings claim before this Honorable Court will not hinge on the incorrectness of any of preceding state court decision. Putative Class Plaintiffs herein ask this Honorable Court to determine whether a taking occurred

---

[24] *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 436-37 (5th Cir. 2000).
[25] *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994).

when the City failed to return immediately the private property that the state courts adjudged to belong to the Putative Class Plaintiffs, rather than the state court's holding that ATES was an illegal ordinance.  Putative Class Plaintiffs did not lose in state court, nor are they claiming that the state court decision was incorrect.

22.     Putative Class Plaintiffs find further support for the conclusion that this matter is not barred from being heard by this Honorable Court, because it is not "inextricably intertwined," in the U.S. Fifth Circuit's holding in *Gauthier* v. *Continental Diving Servo Inc.,* 831 F.2d 559, 561 (5th Cir. 1987). In *Gauthier,* the Fifth Circuit stated that this Circuit has not permitted the *Rooker-Feldman* doctrine to impede an action in federal court when the same action would be permitted in the state court of the rendering state. *Id.* As such, the Fifth Circuit has long treated the doctrine in a manner consistent with the requirements of the doctrine of Full Faith and Credit. *Id.* As the prior analysis of the doctrine of *res judicata* demonstrated, a Louisiana state court would not be precluded from hearing this takings claim *now.*

23.      The *Rooker-Feldman* doctrine simply does not bar this Honorable Court from deciding the federal takings issue before it. Based on the jurisprudence of both the Supreme Court and the Fifth Circuit and the inapplicability of the primary policy reason for the doctrine itself, Putative Class Plaintiffs' takings claim is not "inextricably intertwined" to the state court judgment and thus the issue is not barred by the *Rooker-Feldman* doctrine.

24.     Putative Class Plaintiffs' takings claim herein **is not** an attempt to utilize the federal court as a collection agency for a state court judgment.  As shown above, the City's

---

[26] *Plyler v. Moore,* 129 F.3d 728, 731 (4th Cir. 1997).
[27] *Penzoil Co. v. Texaco, Inc*., 481 U.S. 1, 25 (1987).

refusal to return immediately the Putative Class Plaintiffs' property, and its failure to provide just compensation in its place, is a violation of the Takings Clause. The City attempts to recast the *McMahon* final judgment as a "money judgment" covered by Article XII, § 10(C) of the Louisiana Constitution of 1974, and will rely upon a plethora of federal case law holdings finding that state court money judgments cannot be enforced in federal court under a takings claim. However, the ineluctable fact is that the *McMahon* final judgment orders the City to return the Putative Class Plaintiffs' private property - it is not a "recoverable damages" judgment covered by Article XII, § 10(C) of the Louisiana Constitution concerning tort and breach of contract cases. In fact, the U.S. Fifth Circuit Court has spoken directly to the federal court viability of Putative Class Plaintiffs' takings claim in *Vogt v. Board of Commissioners of the Orleans Levee District*, 294 F.3d 684 (5th Cir. 2002):

> The only point requiring resolution at this stage is the levee board's insistence that the landowners' suit is not a takings claim but merely an attempt to execute the judgment of the state courts. We find no support for the levee board's premise that a decree of the Louisiana courts somehow converted private property (the mineral royalties) into public funds subject to an unenforceable lien. *Cf. Webb's Fabulous Pharmacies*, 449 U.S. at 163-64, 101 S.Ct. at 452 ("[A] State, by *ipse dixit*, may not transform private property into public property without compensation."). In the levee board's view, the state courts' holding that the landowners' judgment is unenforceable against the levee board effectively re-characterizes their property right in mineral royalties into an intangible claim against the levee board's property. *Vogt*, 814 So.2d 648. **What was the landowners' property has suddenly vanished behind a veil of sovereign immunity in state court. We hold, however, that this result is untenable against a federal takings claim.**
>
> We do not hold or imply, as the levee board contends, that every tort or breach of contract claim against a governmental entity necessarily becomes a takings claim. Our holding extends only to cases where, as in *Webb's*, the government has forcibly appropriated private

property without a claim of right or of public or regulatory purpose.
[*Vogt*, 294 F.3d at 696-97][footnote omitted][Emphasis added]

*Vogt* is the relevant authority.  It makes clear that, in certain limited circumstances, a state government's failure to return property following a final state court judgment ordering its return, along with that state government's concomitant failure to provide just compensation for the withholding of that property, gives rise to a takings claim in federal court. *Id.*  *Vogt* also speaks against the federal courts being used as a collection agency for "every tort or breach of contract claim." *Id.*  Instead, as is their right, Putative Class Plaintiffs herein seek the immediate return of their private property, as ordered in the *McMahon* final judgment against the City, which the City has refused. *Vogt* recognizes Putative Class Plaintiffs' suit as a viable takings claim, as the *McMahon* final judgment orders the return of private property taken and held by the City, not "recoverable damages" in tort or breach of contract.  The City has ignored the final judgment in *McMahon* and continues to withhold Putative Class Plaintiffs' private property, while providing Putative Class Plaintiffs with no just compensation in place of their withheld property, which violates the Fifth and Fourteenth Amendments of the Constitution of the United States of America, and this Honorable Court provides the Putative Class Plaintiffs with their only recourse.

### Class Action Allegations

25.    The Putative Class Plaintiffs bring this Class action on behalf of themselves and all others similarly situated, for the purpose of asserting the takings and compensatory relief claims alleged in this Complaint on a common basis.

26.     A class action is a superior means, and the only practicable means, by which Putative Class Plaintiffs and unknown Class members can challenge the City's unconstitutional taking of their property without just compensation.

27.     This action is brought and may properly be maintained as a Class action pursuant to Rule 23(a)(1)-(4), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

28.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements of those provisions.

29.     The Putative Class Plaintiffs would be adequate representatives of the class because as they have no conflict of interests, either among themselves or with the class as a whole. Indeed, the Putative Class Plaintiffs, as members of Subclass 1 in the *McMahon* case, are all entitled to the immediate return of his or her property from the City, plus judicial interest, pursuant to the final Judgment of February 21, 2018, in the *McMahon* case, yet none of the Putative Class Plaintiffs has had his or her property returned by the City, none of those class members identified as Subclass 1 in the *McMahon* case has had his or her property returned by the City, and no one covered under the *McMahon* final judgment has received any just compensation from the City in place of their property withheld by the City.

30.     Putative Class Plaintiffs, on behalf of themselves and all others similarly situated, are entitled to affirmative relief and attorneys fees for the City's ongoing refusal to return immediately Subclass 1's property in the *McMahon* case, without just compensation, which

amounts to a taking in violation of the Fifth Amendment. A remedy for any taking of private property in violation of the Fifth Amendment is provided for in 42 U.S.C. § 1983.[28]

31.     Under 42 U.S.C. § 1983, the relief granted for an "uncompensated taking" may be "declaratory, injunctive, compensatory, or a combination thereof."[29] In light of the discretion 42 U.S.C. § 1983 accords to this Honorable Court in reference to the particular remedy that may be awarded, Putative Class Plaintiffs respectfully request that this Honorable Court hold that the City must return immediately the Putative Class Plaintiffs' property as directed in the final judgment of February 21, 2018 in the *McMahon* case, together with all applicable interest, or to provide the equivalent in just compensation. As previously stated, the dollar figure in the *McMahon* final judgment represents a quantification of the Putative Class Plaintiffs' private property taken by the City, not a "recoverable damages" award in tort or breach of contract.

32.     Under 42 U.S.C. § 1983, as part of the affirmative relief that can be granted for a violation of the Takings Clause, it is proper for attorneys fees to be awarded to the plaintiffs. According to 42 U.S.C. § 1988(b), in any action or proceeding brought to enforce a provision of 42 U.S.C. § 1983 this Honorable Court has the discretion to award the "prevailing party, other than the United States, a reasonable attorney's fees as part of the costs."[30]  Putative Class Plaintiffs respectfully request that this Honorable Court grant reasonable attorneys' fees and all costs when they prevail.

## Claims for Relief

---

[28] *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 399-400, 99 S.Ct. 1171, 1176 (1979); U.S.C.A. CONST. AMENDS. V, XIV; 42 U.S.C. § 1983.

[29] *Nemmers v. City of Dubuque, Iowa*, 716 F.2d 1194, 1201 (8th Cir. 1983).

[30] 42 U.S.C. § 1988(b); *See Louisiana Debating and Literary Association* v. *City of New Orleans,* 1995 WL 510074 (E.D.La.1995); *See Hopwood* v. *State of Texas,* 236 F.3d 256, n.85 (5th Cir. 2000).

33.    Putative Class Plaintiffs incorporate by reference the allegations in paragraphs 1-32.

34.    Putative Class Plaintiffs herein, on behalf of themselves and all other members of the class of similarly situated persons identified and defined as Subclass 1 in the case of *Joseph R. McMahon, III, et al v. City of New Orleans*, 2018 CA 0842 (c/w 2018 CA 0843, c/w  2018 CA 0844, c/w 2018 CA 0845, c/w 2018 CA 0846) (La.App. 4 Cir. 9/4/2019), 280 So.3d 796; *cert. denied* 2019-CC-01562 (La. 11/25/2019), 283 So.3d 498, seek:

(1) Certification as a class action pursuant to F.R.C.P. Rule 23;

(2) Judgment against the City finding that the City has violated the Takings Clause of the Fifth Amendment of the Constitution of the United States of America by withholding Putative Class Plaintiffs/Subclass 1's private property without providing just compensation, despite being under a final judgment in the *McMahon* case ordering the City to return immediately said private property to Putative Class Plaintiffs/Subclass 1; and

(3) Judgment against the City ordering the City to return immediately the Putative Class Plaintiffs/Subclass 1's private property as outlined and quantified in the final judgment in the *McMahon* case on February 21, 2018, together with all applicable interest, or to provide the equivalent in just compensation.

35.    Putative Class Plaintiffs further seek an Order and Judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and any other relief this Honorable Court deems just and proper.

**WHEREFORE,** Putative Class Plaintiffs, Susan Lafaye, Lisa Picone and Inez Victorian, pray that the defendant be duly cited to appear and answer this *First Supplemental and Amending Complaint - Class Action* and after all legal delays and due proceedings had, that there be judgment

rendered herein in favor of the class plaintiffs and against the defendant, the City of New Orleans**,** in a full and true sum reasonable under the circumstances, together with legal interest thereon from the date of judicial demand, until paid, and for all costs of these proceedings and all general and equitable relief required or necessary in the premises.

Respectfully submitted,

**CERTIFICATE OF SERVICE**
This is to certify that a copy of the
foregoing was sent to all counsel
of record via ECF, telefax and/or U.S.
Mail, this September 3, 2020.

ANTHONY S. MASKA, #25163
P.O. Box 2606
Hammond, Louisiana 70404
T: (504) 784-0383
F: (504) 335-0774
*anthonymaska@gmail.com*
**Counsel for Class Plaintiffs**

and

JOSEPH R. McMAHON, III, #21769, T.A.
2332 Severn Avenue
Metairie, Louisiana 70001
Telephone: (504) 828-6225
Facsimile:  (504) 828-6201
**Counsel for Class Plaintiffs**

18