UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SUSAN LAFAYE, LISA PICONE and** | * | **CIVIL ACTION NO. 20-00041** |
| **INEZ VICTORIAN** | * | |
| | * | **SECTION: "E"** |
| **VERSUS** | * | **JUDGE MORGAN** |
| | * | |
| **THE CITY OF NEW ORLEANS** | * | **MAG. DIV. (3)** |
| | * | **MAGISTRATE JUDGE DOUGLAS** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

**May It Please the Court:**

Defendant, the City of New Orleans (the "City"), respectfully submits this Memorandum in Support of its Motion to Dismiss First Amended Complaint Pursuant to Rule 12(b)(6) for Failure to State a Claim upon which Relief May Be Granted.

**I.   Introduction.**

An obligation to pay money impacts policy because the money used to pay a judgment will be unavailable for other purposes, such as public health and public safety expenditures. To avoid judgments overriding the policy choices of elected officials, Article 12, Section 10 of the Louisiana Constitution prohibits a judgment creditor from collecting on a money judgment without a political subdivision first appropriating funds to pay the judgment. Plaintiffs request that this Court bypass Louisiana law and, with their reengineered complaint, seek to enforce a state court judgment in a federal court. Plaintiffs do not allege a taking of property and, therefore, do not state a claim upon which relief may be granted. The City requests that this Honorable Court grant its motion and dismiss Plaintiffs' Complaint with prejudice at Plaintiffs' cost.

**II.     Background.**

On January 6, 2020, Plaintiffs initiated this suit against the City alleging violations of rights protected by the takings clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. *See* R. Doc. 1. The City filed a Motion to Dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) or Rule 12(c) for failure to state a claim upon which relief may be granted. *See* R. Doc. 21. The City moved for dismissal and argued (1) Plaintiffs' Complaint premised solely on the Fifth and Fourteenth Amendments did not invoke this Court's subject matter jurisdiction; (2) requesting a federal court to enforce a state court judgment against a governmental entity is not a claim upon which relief may be granted; and (3) Plaintiffs claims are precluded under the doctrine of *res judicata*. *See id*. Plaintiffs then filed a Motion for Leave to File First Supplemental and Amending Complaint. *See* R. Doc. 25.

On August 18, 2020, the Court granted Plaintiffs leave to file an amended complaint. *See* R. Doc. 36. Plaintiffs filed on September 3, 2020 a First Supplemental and Amending Complaint—Class Action ("First Amended Complaint"). *See* R. Doc. 37. Plaintiffs First Supplemental and Amending Complaint invokes this Court's jurisdiction under 42 U.S.C. § 1983 and § 1988, and the Fifth and Fourteenth Amendments. *Id*. at ¶ 1. Plaintiffs requests this Court order the City to return Plaintiff's property. *Id*. at ¶ 34(3).

In Plaintiffs' First Amended Complaint, Plaintiffs allege that in January of 2008 the City enacted and began enforcing Code of Ordinances of the City of New Orleans Chapter 154, Article XVII, Sections 154-1701 through 154-1704, the Automated Traffic Enforcement System ("ATES"). *See* R. Doc. 37 at Introduction and Nature of Action. In state court, multiple suits challenging ATES were filed and, later, consolidated into the case of *Joseph R. McMahon, III, et al. v. City of New Orleans*, 2018-CA-0842 c/w 2018-CA-0844, 2018-CA-0845, 2018-CA-0846

(La. App. 4 Cir. 9/29/2019) (the "*McMahon* litigation"). *See id.* A class of persons obtained a state court judgment, signed on February 21, 2018, which ordered the City to refund ATES fines and fees paid to a class of persons for the period January 1, 2008 through November 3, 2010, in the amount of $25,612,690.32, with judicial interest (the "*McMahon* judgment"). *See id.* Plaintiffs allege that appellate review is complete and the February 21, 2018 judgment is final. *See id.*

Plaintiffs' First Amended Complaint cites a portion of a newspaper article that purportedly quotes New Orleans Mayor Cantrell's Office's statement to NOLA.com in response to a question as to how the City planned to address the February 21, 2018 judgment. *See id.* The statement, as written in Plaintiffs' First Amended Complaint, was "All state court judgments, including the referenced judgment, will be paid as subject to an appropriation. . . . The City of New Orleans has recently made progress in addressing the judgment list, and will continue with forward movement." *Id.* (allegedly quoting a NOLA.com article) (internal quotations omitted).

The allegations supporting Plaintiffs claims are set forth in paragraphs 5 through 24 of the First Supplemental and Amending Complaint. In paragraphs 5 through 13, Plaintiffs allege a takings by arguing the *McMahon* judgment is not a "money judgment, *id*. at ¶¶ 5–7, the *McMahon* judgment orders a refund/return of Plaintiffs property that the City has not returned in violation of the takings clause, *id*. at ¶¶ 8–12, and that Plaintiffs have been denied just compensation even though the City has not "officially" asserted that it will not return the property. *Id*. at ¶ 13. In paragraph 24, Plaintiffs rely on *Vogt v. Board of Commissioners of the Orleans Levee District*, 294 F.3d 684 (5th Cir. 2002) and allege "in certain limited circumstances, a state government's failure to return property following a final state court judgment ordering its return, along with that state government's concomitant failure to provide just compensation for the withholding of that property, gives rise to a takings claim in federal court." *Id*. at ¶ 24.

In paragraphs 14 through 19, Plaintiffs respond to the City's prior argument that Plaintiffs' claims are barred by the doctrine of *res judicata*. In those paragraphs, Plaintiffs allege that the doctrine of *res judicata* does not bar Plaintiffs' claims because the "taking complained of by Putative Class Plaintiffs did not arise until the City refused to return immediately the Putative Class Plaintiffs' property, following the final judgment in *McMahon* on November 25, 2019." *Id*. at ¶ 16 (emphasis removed) (internal footnotes omitted).

In paragraphs 20 through 23, Plaintiffs respond to the City's prior argument that this Court should not exercise jurisdiction over this matter under the *Rooker-Feldman*. Plaintiffs allege the *Rooker-Feldman* doctrine does not bar this Court from deciding the federal takings claim because Plaintiffs' takings claim is not "inextricably intertwined" to the state court judgment. *Id*. at ¶ 23.

**III.   Legal Standard.**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. However, the court does not accept as true legal conclusions or mere conclusory statements, *id.*, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)). "[T]hreadbare

4

recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient. *Iqbal*, 556 U.S. at 663, 678 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. (quoting Fed. R. Civ. P. (8)).

## IV.     Argument.

The takings clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment to the United States Constitution, states: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.; *see also Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536, 125 S. Ct. 2074, 161 L. Ed. 2d 876 (2005). The Fifth Circuit has held that to prevail on a takings claim, the plaintiff "must demonstrate that he has a protectable property interest*." Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 269 (5th Cir. 2012). The Fifth Circuit further noted that the Constitution does not create property interests, but rather protects them. *Id*. "Because the Constitution protects rather than creates property interests, courts must resort to existing rules or understandings that stem from an independent source such as state law to define the range of interests that qualify for protection as property under the Fifth and Fourteenth Amendments." *Id*. (internal quotations and citation omitted).

Plaintiffs' First Amended Complaint can be read either as alleging a takings of the fines and fees collected under ATES or a takings of the *McMahon* judgment. Under either reading of the First Amended Complaint, Plaintiffs do not allege a valid takings claims.

**A.     Plaintiffs fail to state a claim for a takings of fines and fees paid under ATES.**

**1. Plaintiffs' takings claim of fines and fees paid under ATES is prescribed.**

Plaintiffs allege the taking of ATES fines and fees paid to a class of persons for the period January 1, 2008 through November 3, 2010. Plaintiffs' takings theory, which is disputed, is nonetheless prescribed. A 12(b)(6) motion to dismiss is the proper vehicle to challenge that a plaintiff's action is barred by prescription if the complaint on its face shows that prescription has run. *See Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003); *see Mann v. Adams Realty Co., Inc.*, 556 F.2d 288 (5th Cir. 1977). In the event that the Court determines that Plaintiffs have properly stated a claim under 42 U.S.C. § 1983, which is denied, Plaintiffs' action would be delictual in nature and subject to the liberative prescription of one year established by Louisiana Civil Code Article 3492. *See Jones v. Orleans Par. Sch. Bd.*, 688 F.2d 342, 344 (5th Cir. 1982) ("It is well established in decisions in this Circuit that wrongs committed by Louisiana state officials in violation of federal law are considered to be torts subject to the one-year prescriptive period."); *see also Francois v. City of New Orleans*, No. 10-4263, 2010 WL 5806007, at * 3 (E.D. La. Dec. 7, 2010); *Anderson v. City of New Orleans*, No. 03-3010, 2004 WL 1396325, at * 3 (E.D. La. June 18, 2004); *Broussard v. Foti*, No. 00-2318, 2001 WL 322066, at * 1 (E.D. La. April 2, 2001). Plaintiffs' Section 1983 takings claims is prescribed and should be dismissed.

Assuming Plaintiffs' allegations are true, a class of persons obtained a state court judgment, signed on February 21, 2018, which ordered the City to refund ATES fines and fees paid to a class of persons for the period January 1, 2008 through November 3, 2010, in the amount of $25,612,690.32, with judicial interest. Based on these allegations, Plaintiffs' alleged "takings" occurred sometime between January 1, 2008 through November 3, 2010. On January 6, 2020, Plaintiffs filed this suit alleging a federal takings claim. Applying a one-year prescriptive period, Plaintiffs' claim is prescribed.

6

Further, even if Plaintiffs argue that they were not aware of any "takings" until they obtained the *McMahon* judgment, that state court judgment was signed on February 21, 2018. The notice of signing of that judgment is dated March 20, 2018. R. Doc. 21-2. Under Plaintiffs' takings theory, they would have had knowledge of their claim on March 20, 2018. Even under that later date, Plaintiffs' takings claims alleged in their action filed on January 6, 2020 is prescribed.

### 2. The takings clause is inapplicable to civil fines.

The Fifth Amendment, however, limits when a government can take property, and whether a property interest is protected depends on whether that interest is fundamental under the United States Constitution. In their attempt to transform their case into a federal case, Plaintiffs rely on the Fifth Circuit decision in *Vogt v. Board of Commissioners of the Orleans Levee District* and allege "in certain limited circumstances, a state government's failure to return property following a final state court judgment ordering its return, along with that state government's concomitant failure to provide just compensation for the withholding of that property, gives rise to a takings claim in federal court." R. Doc. 37, at ¶ 24.

*First*, *Vogt* has no applicability to Plaintiffs' allegations. In *Vogt*, a legislative act ordered the refund of mineral royalties to plaintiffs. As characterized by the Fifth Circuit "the landowners' interests in $2.85 million in royalties were settled by the passage of Act 233, and their claims for the property have since been reduced to judgment." *Vogt*, 294 F.3d at 697. The Fifth Circuit suggested in *dicta* that the landowners in *Vogt* could allege a taking of property based on the appropriation of their mineral royalties. After the Fifth Circuit ruling in *Vogt*, the district court analyzed what was the actual property alleged to have been taken:

> what has actually been taken are the mineral royalties because the actual judgement is just an accounting or quantification of the mineral royalties themselves. The judgment that defendants refer to is simply an order by the Louisiana state court ordering the Orleans Levee District to return to the plaintiffs the mineral royalties, which

7

> the Orleans Levee District accumulated from the plaintiffs' property. This conclusion is consistent with the dicta from the Fifth Circuit's decision labeling the property alleged to have "taken" as the mineral royalties. *See Vogt,* 294 F.3d at 696 (stating that a taking is alleged where "the government has forcibly appropriated private property [the mineral royalties] without a claim of right or of public or regulatory purpose.").

*Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 2000-3195, 2002 WL 31748618, at *3 (E.D. La. Dec. 5, 2002).

Unlike the plaintiffs in *Vogt*, here, Plaintiffs allege that they suffered takings of property after a Louisiana state court invalidated ATES from January 1, 2008 through November 3, 2010. Plaintiffs argue that in the state court lawsuits ATES was found to be invalid because it was administered by the City's Department of Public Works and sought a return of paid fines and fees. *See* R. Doc. 37 at Introduction and Nature of Action. While plaintiffs in the state court litigation obtained a judgment, that judgment is not analogous to the judgment in *Vogt* because the state court judgment in this case represents money owed based on fines and fees paid to the government under the later-invalidated ATES. At no point prior to the state court judgment in the *McMahon* litigation, however, did Plaintiffs have a property right in the fines and fees that could allow Plaintiffs to characterize their claim as a takings claim. The takings clause is inapplicable to a lawful levying of a civil fine. *See Bevis v. City of New Orleans*, No. 2010-CV-4161, 2011 WL 2899120, at *4 (E.D. La. July 18, 2011). At the time Plaintiffs paid the fines and fees, ATES was a valid ordinance. The government's collection of the fines and fees is unlike and distinguishable from the mineral royalties at issue in *Vogt* and, as a result, Plaintiffs cannot allege a takings akin to the facts in *Vogt*.

*Second*, *Vogt* is limited to cases in which a government has "forcibly appropriated private property without a claim of right or of public or regulatory purpose." *Vogt*, 294 F.3d at 697. The

8

Eastern District of Louisiana in *Bennett v. City of New Orleans* recognized that *Vogt* only applied to cases in which a government has "forcibly appropriated private property without a claim of right or of public or regulatory purpose." No. 2003-CV-912, 2004 WL 60316, at *3 (E.D. La. Jan. 9, 2004) (Vance, J.) (finding plaintiff's reliance on *Vogt* in support of a takings claim is misplaced).

Here, *Vogt* would not apply because, in this case, the City was not exercising eminent domain power to collect fines and fees. The use of traffic cameras is the exercise of "police power to protect public safety, the character of the government action leans heavily against finding a taking." *Mills v. City of Springfield, Mo.*, 2010-CV-04036, 2010 WL 3526208, at *12 (W.D. Mo. Sept. 3, 2010). The police power is the "inherent power to govern persons and things, within constitutional limits, for promotion of general health, safety, welfare, and morals." *New Orleans Campaign for a living Wage v. City of New Orleans*, 2002-0991, p. 8 (La. 09/04/02), 825 So. 2d 1098, 1104. The narrow and rare takings claim outlined in *Vogt* does not allow Plaintiffs to convert their traffic fines into a federal takings claim because the paid fines and fees were not "taken" or "forcibly appropriated" by the City. Rather, Plaintiffs allegedly paid fines and fees under a later invalidated ordinance. Plaintiffs cannot analogize the facts of this case to the facts in *Vogt* because the City's collection of fines and fees under ATES was not through an exercise of eminent domain power.

Although ATES was later found to be procedurally invalid, such a result hardly gives rise to an allegation that Plaintiffs' money was "taken" or forcibly appropriated" by the City. Assuming Plaintiffs' allegations are true, they allege fines and fees were paid under an invalid ordinance. Based on this allegation, Plaintiffs cannot allege a takings because, as the Eastern District of Pennsylvania stressed, a takings claim only arises with property is legally taken. *See Thomas v. Philadelphia Hous. Auth.*, 2010-CV-6185, 2011 WL 2415157, at *5 (E.D. Pa. June 15, 2011). In

*Thomas*, the Philadelphia Housing Authority instituted a rule that required landlords participating in Section 8 programs to complaint a training course. *Id*. at * 1. Landlords filed a suit alleging the housing authority unlawfully collected money from them under the pretext that the funds would qualify for Section 8, but instead were used to support other lobbying activities. *Id*. The plaintiffs claimed, among other claims, that the housing authority's actions constituted an unlawful takings. *Id*. The federal court denied the landlord's takings claim, finding the housing authority's actions did not constitute an unlawful takings. *Id*. at * 5. The court stated a takings claim arises "only when the property is legally taken" and agreed with the defendant that there was no allegation anything was "taken" from the plaintiffs. *Id*. The court stated that the plaintiffs' "may have been entitled to a refund of their money under some other theory of law, but they are not entitled to compensation under the Takings Clause of the Fifth Amendment." *Id*. Similar to the case here, while Plaintiffs may be entitled to a refund under the theory promoted in the state court litigation, Plaintiffs are not also entitled to compensation under the takings clause.

*Third*, Plaintiffs' attempt to analogize their case to *Vogt* fails because the City has not refused to pay the judgment and, therefore, the City has not taken Plaintiffs' property. The Fifth Circuit has already rejected applying *Vogt* to a case in which a governmental entity has not refused to pay a debt. *See Freeman Decorating Co. v. Encuentro Las Americas Trade Corp.*, 352 Fed. Appx. 921, n. 1, 2009 WL 3698036 (5th Cir. 2009) (noting that the "City's recognition of the debt distinguishes this case from *Vogt*" and stating that "*Vogt* dicta does not apply to the instant case because, unlike in *Vogt*, the New Orleans City Council has not refused to satisfy the judgment."). The United States Court of Appeals for the Sixth Circuit approvingly cited *Freeman* and rejected a plaintiff's takings claim based on an unpaid judgment because "there is no evidence that property right ultimately will not be honored." *Ostipow v. Federspiel*, 18-2448, 2020 WL 4785546, at *5

(6th Cir. Aug. 18, 2020). *Vogt* simply does not apply because the City has not refused to pay the state court judgment, which Plaintiffs acknowledge in their First Amended Complaint by alleging that the City plans to treat the state court judgment like all state court judgments and be paid as subject to an appropriation. *See* R. Doc. 37 at Introduction and Nature of Action.

### 3. Plaintiffs' claims are precluded under *res judicata*.

The Fifth Circuit has held "[a] federal court asked to give *res judicata* effect to a state court judgment must apply the *res judicata* principles of the law of the state whose decision is set up as a bar to further litigation." *Production Supply Co., Inc. v. Fry Steel, Inc.*, 74 F.3d 76, 78 (5th Cir. 1996) (quoting *E.D. Systems Corp. v. Southwestern Bell Tel. Co.*, 674 F.2d 453, 457 (5th Cir. 1982)). Louisiana law provides: "If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment." La. R.S. 13:4231(1).

A judgment is final when it decides the merits of the case, in whole or in part. *See* La. C.C.P. art. 1841. In order for the preclusive effects of *res judicata* to apply, five elements must be satisfied: 1) there must be a previous valid judgment; 2) that judgment must be final; 3) the parties in the first and second suit must be the same; 4) the causes of action asserted in the second suit must have existed at the time of final judgment in the first suit; and 5) the causes of action asserted in the second suit must arise out of the transaction or occurrence that was the subject matter of the first suit. *See Burguieres v. Pollingue*, 843 So. 2d 1049, 1053 (La. 2/25/03). This action satisfies all five elements of *res judicata*.

The first three elements of *res judicata* are met. The introductory paragraphs of Plaintiffs' First Amended Complaint allege the existence of a **final**, **valid** February 21, 2018 judgment in the *McMahon* litigation and attach a copy of that judgment as Exhibit 1. *See* R. Doc. 37 at Ex. 1.

11

Plaintiffs further allege that "Putative Class Plaintiffs and the City are the **same parties** as in *McMahon*" (emphasis added). Rec. Doc. 37, at ¶ 15.

The fourth element of *res judicata* is met because Plaintiffs' claims asserted in this suit existed at the time of the final judgment in the *McMahon* litigation. While Plaintiffs argue their claim did not exist until they obtained a final state court judgment, under their takings theory, Plaintiffs' property was "taken" between 2008 and 2010. Plaintiffs' claim of a violation under the Fifth and Fourteenth Amendments, which is disputed, would have existed at the time of the prior suit and arises out of the same transaction or occurrence that is the subject matter of the state court suit.

Finally, the fifth element of *res judicata* is met because Plaintiffs' claims in this suit arise out of the transaction or occurrence that was the subject matter of the *McMahon* litigation. Both suits concern ATES tickets issued from January 1, 2008 through November 3, 2010.

Because all of the elements of *res judicata* are met, Plaintiffs' First Amended Complaint should be precluded under *res judicata* and should be dismissed.

### 4. **Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine.**

The Court should also dismiss this suit under the *Rooker-Feldman* doctrine, which deprives federal courts of jurisdiction brought by litigants complaining of an unfavorable state-court judgment. *See Dist. of Colum. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 n. 16 (1983); *see also Lumpkins v. Bank of Am.*, 2012-CV-9, 2012 WL 6115107, at *3 (E.D. La. Dec. 10, 2012) (finding a plaintiff's claims all stem directly from a state court judgment and, as a result, the court has no jurisdiction over them under *Rooker-Feldman*).

Here, Plaintiffs' takings claim is "inextricably intertwined" with a state court judgment, a conclusion evident by Plaintiffs' takings theory, which alleges a takings based on fines and fees paid under an ordinance invalidated in the state court litigation. Plaintiffs' federal court claim is

inextricably intertwined with the claims tried in state court. In fact, in a "Master Petition" filed on March 23, 2012 in the *McMahon* litigation, the petition alleged that ATES is unconstitutional and pleaded: "***Violation of the Fifth Amendment to the United States Constitution, in that the ordinances and their enforcement give rise to an unconstitutional taking of property for public purpose***." R. Doc. 21-3. Plaintiffs' takings claims is inextricably intertwined with the *McMahon* litigation because the claim was pleaded in the *McMahon* litigation. Had Plaintiffs lost in state court, any new claim asserted in federal court would be barred by the *Rooker-Feldman* doctrine. Here, even though Plaintiffs obtained a favorable state court judgment, the *Rooker-Feldman* doctrine should also bar their claims.

**B.     To the extent Plaintiffs allege a takings based on nonpayment of the *McMahon* judgment, such a claim should be dismissed.**

Louisiana law unequivocally provides that judgment creditors may not seize assets of the State, or a political subdivision thereof, to satisfy a judgment unless the appropriate government entity has allocated funds for payment of that debt. La. Const. art. XII, § 10(C); La. R.S. 13:5109(B)(2). Thus, a judgment creditor's authority to enforce a judgment against the state or a political subdivision is strictly within the control of the legislative body, which must appropriate funds for payment of a judgment. Consistent with Louisiana law prohibiting a judgment creditor from seizing the assets of a political subdivision, like the City of New Orleans, as previously briefed to this Court, whether a plaintiff can use federal courts as a collection tool for a Louisiana state court judgment is not an open question.

The United States Court of Appeals for the Fifth Circuit, in *Minton v. St. Bernard Parish School Board*, denied a disgruntled judgment creditor's attempt to use federal court to collect on a final judgment against a Louisiana parish school board. 803 F.2d 129, 132 (5th Cir. 1986). In *Minton*, the plaintiffs were granted a final judgment against a Louisiana parish school board—also

13

a political subdivision of the state—by a Louisiana state court. *Id*. at 130–131. The school board failed to pay the judgment and the plaintiffs filed suit in federal court, seeking injunctive and monetary relief against the school board pursuant to 42 U.S.C. § 1983. *Id*. at 131. The Fifth Circuit concluded that the board's failure to pay the Mintons' state court judgment at a specific time demanded by the plaintiff was not actionable under § 1983, holding:

> The Supreme Court determined long ago in *Louisiana ex rel. Folsom v. Mayor of New Orleans* that the property right created by **a judgment against a government entity is not a right to payment at a particular time but merely the recognition of a continuing debt of that government entity**. *Id.* at 132 (emphasis added), *citing Louisiana ex rel. Folsom v. Mayor of New Orleans*, 109 U.S. 285, 3 S. Ct. 211, 27 L. Ed. 936 (1883).

*Id.* at 132 (emphasis added); *see also Folsom*, 109 U.S. at 289 ("A party cannot be said to be deprived of his property in a judgment because at the time he is unable to collect it.").

The Fifth Circuit more recently affirmed a judgment of the Western District of Louisiana that dismissed a plaintiff's attempt to file a federal action to collect on a state court judgment "essentially for the reasons given by the district court in its comprehensive ruling." *Guilbeau v. Par. Of St. Landry*, 341 Fed. Appx. 974, 975, 2009 WL 2573427, at *1 (5th Cir. 2009). In *Guilbeau v. Parish of St. Landry*, No. 2006-0185, 2008 WL 4948836 (W.D. La. Nov. 19, 2008), *aff'd*, 341 F. App'x 974 (5th Cir. 2009), the Western District of Louisiana foreclosed this type of relief, under § 1983, against a political subdivision. *Guilbeau* arose out of the failure of a political subdivision— St. Landry Parish—to pay a judgment issued by a Louisiana state court. *Id.* at *1. The plaintiff filed a lawsuit pursuant to 42 U.S.C. §§ 1983 and 1988 against the parish, alleging that the parish's seventeen-year delay and failure to pay the judgment when requested completely divested him of his property without due process of law. *Id*. The district court denied the plaintiff's claims and dismissed them with prejudice, stating: "[T]he Fifth Circuit however, previously rejected a similar

14

argument, and, indeed, has held *the **failure of a government entity to pay a judgment at a specific time is not a violation of an individual's substantive due process rights***." *Id.* at *8 (emphasis added).

Consistent with the law declared in *Minton* and *Guilbeau*, this Court has dismissed a complaint filed by plaintiffs seeking to use federal courts to collect on state court judgments. In *Davis v. Cantrell*, this Court rejected a plaintiff's takings claim based on an unpaid state court judgment. 2018-CV-0231, 2018 WL 6169255, at *5 (E.D. La. Nov. 26, 2018). In *Davis*, a plaintiff was struck and injured by a New Orleans Police Department cruiser and later filed a suit against the City in a Louisiana state court for damages. *Id.* at *1. The state court entered a judgment in favor of the plaintiff and against the City, and the City placed the judgment on a list of unpaid judgments. *Id.* Because the City had not paid the plaintiff's judgment, the plaintiff filed a federal action alleging, among other causes of actions, that the City's nonpayment of his judgment is an unconstitutional taking of property. *Id.* at *5. This Court rejected the plaintiffs' takings claim, writing:

> Plaintiff does not allege the City has disavowed the debt it owes him. The judgment does not vest Plaintiff with a right to obtain payment from the City at a particular time. It merely recognizes the continuing debt the City owes Plaintiff. The City has not disavowed the debt. The City's refusal to pay Plaintiff at a particular time is not a taking. As a result, the Court dismisses Plaintiff's takings clause claim.

*Id.*

In *Bennett v. City of New Orleans*, Judge Vance also granted a motion to dismiss a suit in which a plaintiff sought a declaration that the City pay a state court judgment. No. 2003-CV-912, 2004 WL 60316, at *1 (E.D. La. Jan. 9, 2004). In *Bennett*, a state court entered judgment for $200,000. Both parties appealed to the Louisiana Fourth Circuit Court of Appeal, which increased

the plaintiffs' award to $300,000. In all other respects, the court of appeal affirmed the judgment of the trial court, and the Louisiana Supreme Court denied supervisory review. *Id.* The plaintiffs filed a federal suit under 42 U.S.C. §§ 1983 and 1988, alleging that, despite repeated amicable demands, the City refused and continued to refuse to pay the plaintiffs any part of the judgments and seeking injunctive and declaratory relief as well as attorney's fees. *Id.* The defendants filed a motion to dismiss under Rule 12(b)(6), arguing that the enforcement of a state-court judgment does not give rise to a claim under §§ 1983 and 1988. *Id.* at *2. This Court granted the motion to dismiss, recognizing that, "in effect, plaintiffs ask the Court to enforce their state court judgments." *Id.* at *2.

In granting the motion to dismiss, the court in *Bennett* held that "***[f]ederal courts should not, under the guise of the Due Process Clause, become embroiled in a party's attempt to enforce . . . state court judgments and settlement agreements against states and municipalities***." *Id.* at *3 (citing *Williamson v. Chicago Transit Auth.,* 185 F.3d 792, 794 (7th Cir. 1999)) (emphasis added). This Court further noted that "[P]laintiffs' claims impinge on comity principles that operate in the area of federal-state relations. To hold that every unpaid state court judgment provides a would-be plaintiff with a cognizable due process claim "would assign the federal courts the role of ombudsmen in monitoring the execution of state court judgments," a role that would surely be destructive of federal-state relations." *Id*. (citing *Biser v. Town of Bel Air*, 991 F.2d 100, 105 n. 2 (4th Cir. 1993)).

Judge Lemelle also dismissed a complaint brought by a plaintiff seeking to enforce in federal court a state court judgment, holding that the "defendant's delay in paying the remaining amount of the state court's judgment has not given rise to a Fifth Amendment violation." *Violet Dock Port Inc., LLC v. Heaphy*, 2019-CV-11586, 2019 WL 6307945, at *2 (E.D. La. Nov. 25,

2019). In *Violet Dock*, the plaintiff in an expropriation case against a Louisiana state political entity obtained a final state court judgment for a just compensation award. *Id*. at * 1. Five months later, the plaintiff filed a 42 U.S.C. § 1983 action in federal court alleging the state political entity's failure to pay the just compensation award is a violation of the plaintiff's constitutional rights and requested the court to order the state political entity to pay the outstanding amount of the state-court judgment. *Id*. The state entity moved to dismiss, arguing that the plaintiff wrongly attempted to use a § 1983 action as a state court judgment collection tool. Judge Lemelle granted the state entity's 12(b)(6) motion, holding that the plaintiff failed to state a claim under § 1983. *Id*. at * 2. Judge Lemelle cited Fifth Circuit and Eastern District of Louisiana decisions that provide "the property right created by a judgment against a government entity is not a right to payment at a particular time, but merely the recognition of a continuing debt of that government entity." *Id*. (citing *Guilbeau, Minton*, and *Davis*, which are discussed above). Relying on this jurisprudence, the court held that "defendant's delay in paying the remaining amount of the state court's judgment has not given rise to a Fifth Amendment violation." *Id*. Like in *Violet Dock*, assuming Plaintiffs' allegations are true, while Plaintiffs allege takings of property occurred through the City's collection of fines and fees under ATES, Plaintiffs do not have a right to a payment of a state court judgment at a particular time.

Here, Plaintiffs seek this Court to become embroiled in a judgment creditor's attempt to enforce a state-court judgment against a state political subdivision. The law is clear—a judgment against a governmental entity does not give the judgment creditor a right to payment at a particular time.

**V.     Conclusion.**

The City respectfully requests that this Honorable Court dismiss Plaintiffs' First Amended Complaint with prejudice, at Plaintiffs' cost.

17

Respectfully submitted,

/s/ James M. Garner

| | |
|---|---|
| **CORWIN ST. RAYMOND (#31330)** | **JAMES M. GARNER (#19589) T.A.** |
| DEPUTY CITY ATTORNEY | **DEBRA J. FISCHMAN (#5578)** |
| **CHURITA H. HANSELL (#25694)** | **STUART D. KOTTLE (#37194)** |
| CHIEF DEPUTY CITY ATTORNEY | SHER GARNER CAHILL RICHTER |
| **DONESIA D. TURNER (#23338)** | KLEIN & HILBERT, L.L.C. |
| SR. CHIEF DEPUTY CITY ATTORNEY | 909 Poydras Street, 28th Floor |
| **SUNNI J. LEBEOUF (#28633)** | New Orleans, Louisiana 70112-1033 |
| CITY ATTORNEY | Telephone: (504) 299-2100 |
| 1300 Perdido Street | Facsimile: (504) 299-2300 |
| City Hall-Room 5E03 | E-mail: jgarner@shergarner.com |
| New Orleans, Louisiana 70112 | dfischman@shergarner.com |
| Telephone: (504) 658-9800 | skottle@shergarner.com |
| Facsimile: (504) 658-9868 | |
| E-mail: cmstraymond@nola.gov | **IKE SPEARS (#17811)** |
| chhansell@nola.gov | SPEARS & SPEARS |
| donesia.turner@nola.gov | 909 POYDRAS STREET, SUITE 1825 |
| sunni.lebeouf@nola.gov | NEW ORLEANS, LA 70112 |
| | Telephone No: (504) 593-9500 |
| | Telecopier No: (504)523-7766 |
| | E-mail: ike@spearslaw.com |

*Attorneys for City of New Orleans*