## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SUSAN LAFAYE, ET AL.,**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO.  20-41** |
| **THE CITY OF NEW ORLEANS,**<br>    **Defendant** | **SECTION: "E" (3)** |

### <u>ORDER AND REASONS</u>

Before the Court is the Motion of the City of New Orleans (the "City") to Dismiss First Amended Complaint Pursuant to Rule 12(b)(6) for Failure to State a Claim upon which Relief may be Granted.[1]

### <u>BACKGROUND</u>[2]

In January 2008, the City adopted a public safety measure known as the Automated Traffic Enforcement System ("ATES").[3] The program collected fines and fees for traffic violations registered by street cameras. In March 2010, a group of citizens led by Joseph R. McMahon, III filed a class action lawsuit against the City in the Civil District Court for the Parish of Orleans, Louisiana challenging ATES under local, state, and federal law.[4] On October 4, 2010, McMahon amended his class action to challenge the City's Department of Public Works' ("DPW") collection of fines under ATES between 2008 and

---

[1] R. Doc. 41. Plaintiffs filed an opposition. R. Doc. 44. The City filed a reply. R. Doc. 47.
[2] The facts are as alleged in Plaintiff's First Supplemental and Amending Complaint with attachments (R. Doc. 37) and the public record of which the Court has taken judicial notice. *See Rome v. HCC Life Ins. Co.*, 323 F. Supp.3d 862, 866-67 (N.D. Tex. 2018), *appeal dismissed*, No. 18-10992, 2018 WL 4233705 (5th Cir. Aug. 30, 2018) (holding that a court faced with a 12(b)(6) motion to dismiss may take judicial notice of publicly-available documents, transcripts, and other "matters of public record").
[3] R. Doc. 37 at 1.
[4] *Id.*

2010.[5] On October 7, 2010, the Louisiana Fourth Circuit Court of Appeal in *Washington-Wapegan v. City of New Orleans* upheld a preliminary injunction finding the City had no authority to place ATES enforcement under the authority of DPW.[6] On November 4, 2010, the City amended the ATES program by removing its enforcement from DPW and transferring it to the New Orleans Police Department ("NOPD").[7] In 2012, several similar class action challenges to the ATES program's enforcement by DPW were consolidated into the class action *Joseph R. McMahon, III v. City of New Orleans* (the "McMahon action") and class certification was granted in favor of "Subclass 1."[8]

On October 10, 2012, the Civil District Court for the Parish of Orleans granted the City's motion for summary judgment upholding the ATES program and finding the City was "permitted to adopt the ordinance under the general police power granted a home rule government."[9] On December 18, 2013, the Louisiana Fourth Circuit Court of Appeal reversed in part the state trial court's grant of summary judgment and remanded the case to the Civil District Court for the Parish of Orleans.[10] The Louisiana Fourth Circuit Court of Appeal found plaintiffs had acquired their cause of action to seek redress for the "illegal" enforcement of the original ATES by the DPW before the City amended the ATES program in November 2010, and the state trial court could not retroactively divest plaintiffs of that cause of action.[11] The Fourth Circuit also found the Plaintiffs "acquired a

---

[5] *Id.*

[6] *Washington-Wagepan v. City of New Orleans*, No. 2010-C-1399 (La. App. 4 Cir. Oct. 7, 2010).

[7] *McMahon v. City of New Orleans*, 2013 WL 6925013 at *2 (La. App. 4 Cir. Dec. 18, 2013).

[8] R. Doc. 37 at 1.

[9] *McMahon v. City of New Orleans*, No. 2010-2196, 2012 WL 13194698 (La. Civ. Dist. Ct.—Orleans Parish Oct. 10, 2012).

[10] *McMahon v. City of New Orleans*, 2013 WL 6925013 (La. App. Dec. 18, 2013), *writ denied*, 135 So.3d 622 (La. 2014).

[11] *Id.*

cause of action to seek redress for the 'illegal' enforcement of the Ordinance by the DPW."[12]

On September 11, 2017, the Plaintiffs filed a motion for partial summary judgment in the state trial court based on the nullity of the City's ordinance passed in violation of its Home Rule Charter.[13] On November 15, 2017, the state trial court in the McMahon action, in an oral ruling, granted Plaintiffs' motion for partial summary judgment in favor of Subclass 1 finding the City had no legal authority to enforce ATES before November 4, 2010 and the City's collection of fines and fees from January 1, 2008 through November 3, 2010 was not permitted by law.[14] The trial court found the ATES ordinance was invalid prior to the City's transfer of authority to enforce the ATES program from DPW to the New Orleans Police Department on November 4, 2010.[15] The trial court judge specifically relied on the Fourth Circuit's recognition that the Plaintiffs had a cause of action "to sue for relief regarding civil fines" and explained that, to him, that meant the Plaintiffs were entitled to relief in the form of the return of the civil fines, not just an injunction.[16] In its judgment signed on February 21, 2018 (the "McMahon judgment"), the trial court ordered the City to "immediately refund to the Class Plaintiffs Subclass 1 all ATES fines and fees paid. . ."[17] The City appealed the judgment to the Louisiana Fourth Circuit Court of Appeal. In its original brief, the City argued the trial court's decision to declare the ATES ordinance null and void was improper and that the Plaintiffs were not entitled to damages

---

[12] *Id.*
[13] Attachment A, Motion for Partial Summary Judgment, *McMahon v. City of New Orleans*, No. 2010-2196 (Sept. 11, 2017).
[14] Attachment B, Hearing Transcript, *McMahon v. City of New Orleans*, No. 2010-2196 (Nov. 15, 2017), at 21:6-21.
[15] *Id.*
[16] *Id.*
[17] R. Doc. 37-1.

and, instead, were entitled only to injunctive relief.[18] The Louisiana Fourth Circuit Court of Appeal affirmed the trial court's judgment on September 4, 2019, holding the ATES ordinance was *void ab initio* until November 4, 2010 and that the order compelling immediate return of the money collected was correct.[19] The City appealed that ruling to the Supreme Court of Louisiana, which refused the City's request for a writ of certiorari on November 25, 2019 (the "LASC's denial of writ").[20]

On January 6, 2020, Plaintiffs initiated this class action against the City under 42 U.S.C. § 1983 alleging violation of their rights protected by the Takings Clause of the Fifth Amendment made applicable to the states through the Fourteenth Amendment to the U.S. Constitution.[21] The City filed a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim.[22] Plaintiffs opposed the motion[23] and requested leave to file an amended complaint,[24] which the Court granted.[25] Plaintiffs filed a First Supplemental and Amending Complaint.[26] The Court denied the City's original motion to dismiss as moot.[27] On October 1, 2020, the City filed the instant motion to dismiss.[28] The City no longer challenges this Court's subject-matter jurisdiction but continues to argue Plaintiffs fail to state a claim upon which relief may be granted under Rule 12(b)(6).[29]

---

[18] Attachment C, Original Brief on behalf of Defendant-Appellant, *McMahon v. City of New Orleans*, No. 2018-CA-0842 (La. App. 4 Cir. Apr. 29, 2019).

[19] *Id.* at 2; R. Doc. 37-2.

[20] *Id.* at 3; *See McMahon, v. City of New Orleans,* 2019-CC-01562, 283 So.3d 498 (La. Nov. 25, 2019).

[21] R. Doc. 37 at 6, ¶ 8. The City has not alleged a Fourteenth Amendment due process violation.

[22] R. Doc. 21.

[23] R. Doc. 24.

[24] R. Doc. 25.

[25] R. Doc. 27.

[26] R. Doc. 37.

[27] R. Doc. 38.

[28] R. Doc. 41.

[29] R. Doc. 41-1; Fed. R. Civ. P. 12(b)(6).

In their First Supplemental and Amending Complaint, Plaintiffs allege, "the City has violated the Takings Clause of the Fifth Amendment of the Constitution of the United States of America by withholding Putative Class Plaintiffs/Subclass 1's private property without providing just compensation, despite being under a final judgment in the McMahon action ordering the City to return immediately said private property. . ."[30] Plaintiffs allege that "[s]ince November 25, 2019, the City has refused to return immediately the Putative Class Plaintiffs' property. . ."[31]

Plaintiffs' assert their cause of action is based solely on the City's unconstitutional refusal, upon the LASC's denial of writ, to return to them the money that was ordered to be returned in the McMahon judgment. Plaintiffs allege the taking "did not arise until the City refused to return immediately the Putative Class Plaintiffs' property, following the final judgment in *McMahon* on November 25, 2019."[32] According to the Plaintiffs, the City's attempt to "hid[e] behind sovereign immunity provided by the Constitution of the State of Louisiana's Article XII, § 10(C) concerning judgments for 'recoverable damages' against the State and its political subdivisions" gave rise to the instant takings claim.[33]

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[34] "To survive a motion to dismiss, a complaint must contain sufficient

---

[30] R. Doc. 37 at 17, ¶ 34(2).
[31] *Id*. at 3.
[32] *Id*. at 9, ¶ 16.
[33] *Id*. at 9-10, ¶ 16.
[34] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[35]
"A claim has facial plausibility when the plaintiff pleads factual content that allows the
court to draw the reasonable inference that the defendant is liable for the misconduct
alleged."[36] The court, however, does not accept as true legal conclusions or mere
conclusory statements, and "conclusory allegations or legal conclusions masquerading as
factual conclusions will not suffice to prevent a motion to dismiss."[37] "[T]hreadbare
recitals of elements of a cause of action, supported by mere conclusory statements" or
"naked assertion[s] devoid of further factual enhancement" are not sufficient.[38]

In considering Rule 12(b)(6) motions, "courts must consider the complaint in its
entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6)
motions to dismiss, in particular, documents incorporated into the complaint by
reference, and *matters of which a court may take judicial notice*."[39] Under Rule 201 of
the Federal Rules of Evidence, "[t]he court may judicially notice a fact that is not subject
to reasonable dispute because it can be accurately and readily determined from sources
whose accuracy cannot reasonably be questioned."[40] Moreover, "[t]he court may take
judicial notice on its own."[41]

In summary, "[f]actual allegations must be enough to raise a right to relief above
the speculative level."[42] "[W]here the well-pleaded facts do not permit the court to infer

---

[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[36] *Id.*
[37] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[38] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[39] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (emphasis added); *see also Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir.2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").
[40] FED. R. EVID. 201(b)(2).
[41] FED. R. EVID. 201(c)(1).
[42] *Twombly*, 550 U.S. at 555.

more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]'—that the pleader is entitled to relief."[43] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[44]

## LAW AND ANALYSIS

## I. The *Rooker-Feldman* doctrine does not deprive the Court of jurisdiction.

The City's motion is styled as a motion to dismiss based on Rule 12(b)(6) for failure to state a claim. Nevertheless, the City argues the *Rooker-Fel*dman doctrine applies, which is properly raised as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction to entertain collateral attacks on state court judgments."[45] The *Rooker-Feldman* doctrine bars this Court from exercising subject matter jurisdiction as final judgments rendered by the highest court of a state are reserved for review by the United States Supreme Court by writ of certiorari.[46] Because the *Rooker-Feldman* doctrine is jurisdictional, it must be addressed first.

The *Rooker-Feldman* doctrine is a narrow one "confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district review and rejection of those judgments."[47] The doctrine prevents federal courts from modifying or reversing state court judgments without express congressional authorization.[48] As a

---

[43] *Id.* (quoting FED. R. CIV. P. 8(a)(2)).
[44] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).
[45] *Weaver v. Texas Capital Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011).
[46] 28 U.S.C. § 1257(a).
[47] *Truong v. Bank of America*, 717 F.3d 377, 382 (5th Cir. 2013) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (5th Cir. 2005)).
[48] *Id.* (citing *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004)).

result, the source of the federal plaintiff's alleged injury must be considered. If a federal plaintiff complains of an injury caused by a state court judgment, that claim is barred by the *Rooker-Feldman* doctrine. If, on the other hand, the federal plaintiff complains of an allegedly illegal act by an adverse party, *Rooker-Feldman* does not bar jurisdiction.[49]

First, Plaintiffs, in fact, are not state court losers, as the McMahon judgment was a favorable result at the state trial court and was affirmed by the state appellate courts. Plaintiffs' claim in this Court does not rely on any argument that the state courts erred. Second, Plaintiffs are not complaining of an injury caused by a state court judgment. Instead, their cause of action is based on the allegedly wrongful act of the City in refusing to return to them their money upon the LASC's denial of writ. The *Rooker-Feldman* doctrine does not apply under these circumstances.

The City nevertheless argues *Rooker-Feldman* bars the takings claim because it is "inextricably intertwined" with the McMahon judgment on the validity of the ATES program.[50] Numerous federal courts of appeals have held that categorizing federal and state claims as "inextricably intertwined" does not enlarge the scope of the *Rooker-Feldman* doctrine.[51] Instead, the phrase is a descriptive label devoid of substantive content.[52]

The *Rooker-Feldman* doctrine does not deprive the Court of jurisdiction over Plaintiffs' § 1983 takings claim.

---

[49] *Id.* at 382 (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).
[50] R. Doc. 41-1 at 12.
[51] *Truong*, 717 F.3d at 385 (citing *McKithen v. Brown*, 481 F.3d 89, 97 n. 7 (2d Cir. 2007) ("independent claim" and "inextricably intertwined" are simply descriptive labels devoid of substantive content)).
[52] *Id.*

**II.    Plaintiffs' takings claim is not prescribed on its face under Louisiana law as prescription did not begin to run until at least November 25, 2019.**

The City argues Plaintiffs' takings claim has prescribed on its face. Liberative prescription bars an action for the enforcement of a legal right when there has been inaction for a statutory period of time.[53] "Prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished; thus, of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted."[54] An action is prescribed *on its face* if the allegations reveal the claim was brought after the statutory period to bring a claim had elapsed.[55] The defendant carries the burden of proving the prescriptive period applicable to the cause of action and that, based on the allegations, the cause of action was not brought in the time allowed.[56] If the defendant proves the action has prescribed on its face, the burden then shifts to the plaintiff to prove an exception to prescription,[57] such as *contra non valentum*.[58]

---

[53] *See* La. Civ. C. art. 3447 ("Liberative prescription is a mode of barring of actions as a result of inaction for a period of time."); *See* La. C. Civ. P. art. 421 ("A civil action. . . is commenced by the filing of a pleading presenting the demand to a court of competent jurisdiction.").

[54] *Carter v. Haygood*, 892 So.2d 1261, 1268 (La. 2005) (citing *Foster v. Breaux*, 270 So.2d 526, 529 (La. 1972)); See *Landry v. Blaise, Inc.*, 1999-2617 (La. App. 4 Cir. Aug. 2, 2000), 774 So. 2d 187, 190, *writ denied*, 2000-2820 (La. Dec. 8, 2000), 776 So. 2d 469.

[55] *See Campo v. Correa*, 828 So.2d 502, 509 (La. 2002) ("a petition should not be found prescribed on its face if it is brought within one year of the date of discovery and facts alleged with particularity in the petition show that the patient was unaware of malpractice prior to the alleged date of discovery, and the delay in filing suit was not due to willful, negligent, or unreasonable action of the patient."); *Wilson v. Coleman Wrecking Serv.*, 625 So.2d 521, 522 (La. App. 1 Cir. Sept. 28, 1993) ("Obviously, Wilson's claim is prescribed on its face: there was a lapse of two and a half years from the time his truck was picked up until he filed suit.").

[56] *Spott v. Otis Elevator Co.*, 601 So.2d 1355, 1361 (La. 1992) ("Generally, the party raising the peremptory exception, urging prescription, bears the burden of proof.").

[57] *Eldridge v. Martin Marietta Corp.*, 207 F.3d 737, 743 (5th Cir. 2000) (citing *Dixon v. Houck*, 466 So.2d 57, 60 (La. App. 2 Cir. Feb. 27, 1985)).

[58] Under the Louisiana civil law doctrine of *contra non valentem non currit praescriptio*, prescription will not commence against Plaintiffs if certain conditions prevent them from suing. *Carter v. Haygood*, 892 So.2d 1261, 1268 (La. 2005) (citing *Harvey v. Dixie Graphics, Inc.*, 593 So.2d 351, 354 (La. 1992)).

Because § 1983 does not provide a statute of limitations, federal courts apply the limitations period applicable to similar claims under state law.[59] The Fifth Circuit has held that the statute of limitations for a § 1983 claim "is the same as the statute of limitations in a personal injury action in the state in which the claim accrues."[60] For such cases arising in Louisiana, the Fifth Circuit has held:

> . . . Louisiana has only one personal injury prescriptive period. Article 3492 reads, "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." The comments to the article state that "[t]he notion of delictual liability includes: intentional conduct, negligence, abuse of right, and liability without negligence."
>
> Louisiana has no other personal injury prescriptive period. Although Louisiana has a residual ten-year prescriptive period for "personal actions," article 3499, it does not apply to tort actions.[61]

Plaintiffs do not challenge the application to their claim of the one-year liberative prescriptive period for delictual actions under art. 3492.[62]

The City argues Plaintiffs' takings claim is prescribed on its face under Louisiana Civil Code article 3492 because the McMahon judgment was signed on February 21, 2018,[63] the notice of signing of the judgment was given by the clerk of court to all parties on March 20, 2018,[64] and the instant suit was not filed in this Court until more than a year later on January 6, 2020.[65] The City argues prescription has run using any of these dates as the starting point for the prescriptive period. The City points to La. C. Civ. P. art. 1841 to support its argument the McMahon judgment was final once the trial judge determined

---

[59] *Jones v. The New Orleans Public Belt RR*, Civ. No. 14-2412 at *3 (E.D. La. May 14, 2015), ECF. 23 (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)).

[60] *Victorian v. Cooper*, 538 F.Appx. 570, 571 (5th Cir. Aug. 16, 2013).

[61] *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. Mar. 30, 1989) (citations omitted).

[62] R. Doc. 44 at 8.

[63] R. Doc. 37-1.

[64] R. Doc. 21-2.

[65] R. Doc. 1.

the merits in whole or in part.[66] The City also argues prescription commenced to run once Plaintiffs were "aware of any 'takings,'"[67] which occurred on the date of notice of the McMahon judgment on March 20, 2018.[68]

Plaintiffs argue liberative prescription did not commence to run until at least November 25, 2019, the date of the LASC's denial of writ on the McMahon judgment.[69] Plaintiffs argue this denial rendered the McMahon judgment "final and definitive"[70] under article 2167 of the Louisiana Code of Civil Procedure.[71] Plaintiffs point to La. C. Civ. P. arts. 2166 and 2167 to argue their takings claim could not arise until appellate review of the McMahon judgment in the Louisiana courts was "final and definitive."[72] Plaintiffs argue the City's state-level appeals prevented the McMahon judgment from becoming final. In support of this argument, Plaintiffs cite the Louisiana Supreme Court's per curiam opinion in *McGrail v. Lee*, in which the court stated, "[o]nce we denied the writ, the judgment of the court of appeal became final and definitive. . ."[73]

---

[66] R. Doc. 47 at 3. La. C. Civ. P. art. 1841 states, "[a] judgment that determines the merits in whole or in part is a final judgment."

[67] R. Doc. 41-1 at 7.

[68] R. Doc. 21-2.

[69] Plaintiffs also allege the City refused to return their money because it considered the McMahon judgment a money judgment subject to budgeting appropriation, citing a news article quoting the Mayor published on November 27, 2019. Whether prescription began to run on November 25, 2021 or November 27, 2021 is not material. R. Doc. 37-4.

[70] *Id.*

[71] La. C. Civ. P. art. 2167.

[72] R. Doc. 44 at 8-9. La. C. Civ. P. art. 2167 states, "[w]hen an application for certiorari to the supreme court is timely filed, a judgment of a the court of appeal becomes *final and definitive* after a delay of five days, exclusive of legal holidays, commencing to run on the day after the clerk has mailed the denial by the supreme court of the application for certiorari." (Emphasis added.) Whether prescription began to run upon the LASC's denial of writ (November 25, 2019) or following the statutory delay of five days (November 30, 2019) is immaterial.

[73] *McGrail v. Lee*, 852 So.2d 990 (La. 2003) (citing La. C. Civ. P. art. 2166(E) ("a judgment of the court of appeal becomes final and definitive when the supreme court denies the application for certiorari")).

Louisiana's Civil Code states that "prescription commences to run from the day payment is exigible."[74] The Supreme Court of Louisiana has clarified that liberative prescription commences to run once judicial enforcement of a cause of action is possible.[75] Plaintiffs could not have filed their § 1983 claim based solely on the City's failure to return their money after the LASC denial of the writ until the writ had been denied on November 25, 2019.

The City also argues the codal articles cited by Plaintiffs "only affect when Plaintiffs could enforce and collect on their judgment" rendered by the trial court in the McMahon action.[76] The City's argument relies on its mischaracterization of the Plaintiffs' takings claim as "based on their state court judgment in the McMahon action."[77] Instead, Plaintiffs have clarified their cause of action is based solely on the alleged taking by the City when it refused to return to them their money upon the LASC's denial of writ on November 25, 2019.

Based on Louisiana law and the allegations of the complaint, Plaintiffs' claim was not prescribed on its face when it was filed on January 6, 2020.[78]

## III.   Plaintiffs' claim is not precluded under the theory of *res judicata*.

The City argues Plaintiffs' claim is precluded under the theory of *res judicata*. Under the theory of *res judicata*, a court should "treat[] a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same 'claim' or

---

[74] La. Civ. C. art. 3495. *See Id.* cmt. (b) ("liberative prescription commences to run from the day a cause of action arises and its judicial enforcement is possible.").

[75] *Fishbein v. State ex rel. La. State Univ. Health Science Center*, 898 So.2d 1260, 1267 (La. 2005) (citing La. Civ. C. art. 3495 and 2 M. Planiol, *Traité élémentaire de droit civil* 3 Pt. 2, at 358 (Louisiana State Law Institute trans. 1959)).

[76] R. Doc. 47 at 2.

[77] *Id.* at 2.

[78] Ripeness is not at issue in the instant action. *See Knick v. Township of Scott, PA*, 139 S.Ct. 2162, 2167-68 (2019) (plaintiff does not need to first litigate his or her Fifth Amendment takings claim under § 1983 in state court and may bring such a claim "when the government takes his property without paying for it.").

'cause of action."[79] Federal courts "apply the *res judicata* principles of the state whose decision is set up as a bar to further litigation."[80] Because the City argues the McMahon judgment acts as *res judicata* to preclude this action, this Court must look to the *res judicata* law of Louisiana. The Louisiana Supreme Court has set forth five elements that must be met to preclude a second action under the theory of *res judicata*: (1) the original judgment must be valid; (2) the judgment must be final; (3) the parties must be the same; (4) the cause or causes of action asserted in the second suit must have existed at the time of the final judgment in the original litigation; and (5) the cause of action in the second suit must arise from the same transaction or occurrence that was the subject matter in the original suit.[81]

Plaintiffs argue the theory of *res judicata* does not apply in this case because there is no prior judgment on the sole claim brought by Plaintiffs—the taking that occurred when the City refused to return Plaintiffs' money upon the LASC's denial of writ on the McMahon judgment.[82] The Court agrees. The Fifth Amendment takings claim made in this action, resulting from the City's refusal to pay the McMahon judgment upon the LASC's denial of writ, has not been adjudicated in any court, and did not exist at the time of the McMahon judgment. The instant claim was not and could not have been brought in state court prior to the LASC denial of writ. Without a prior determination and judgment on this specific claim, the theory of *res judicata* cannot apply.

---

[79] *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 436 (5th Cir. 2000).
[80] *Production Supply Co. Inc. v. Fry Steel, Inc.*, 74 F.3d 76, 78 (5th Cir. 1996) (quoting *E.D. Systems Corp. v. Southwestern Bell Tel. Co.*, 674 F.2d 453, 457 (5th Cir. 1982)).
[81] *Burguieres v. Pollingue*, 843 So.2d 1049, 1053 (La. 2003).
[82] R. Doc. 44 at 20.

## IV.   Plaintiffs have stated a § 1983 claim against the City based its violation of their Fifth Amendment rights.

Section 1983 provides: "Every person who, under color of any. . . ordinance. . . of any State causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."[83] Plaintiffs bringing claims under § 1983 must satisfy two prongs: (1) a violation of the U.S. Constitution or other federal law and (2) the violation was committed by a person or entity acting under color of state law.[84]

With respect to the second prong of a § 1983 claim, Plaintiffs allege the City is a political subdivision of the State of Louisiana acting under the color of state law.[85] The City does not dispute the second prong has been met. With respect to the first prong of the § 1983 analysis, Plaintiffs allege there has been an unconstitutional taking of their property by the City in violation of the Fifth Amendment.[86] The Takings Clause of the Fifth Amendment to the United States Constitution states that "private property [shall not] be taken for public use, without just compensation."[87] According to Plaintiffs, the City's failure to comply with the McMahon judgment after the LASC's denial of writ amounts to a taking per se under the Fifth Amendment because the refusal serves no regulatory purpose[88] and was not accompanied by just compensation.

---

[83] 42 U.S.C. § 1983.
[84] *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252-53 (5th Cir. 2005).
[85] R. Doc. 37.
[86] *Id.* at ¶ 34(2).
[87] U.S. Const. amend. V; *see also Urban Developers LLC v. City of Jackson,* 468 F.3d 281, 292 (5th Cir. 2006) (citing *Chicago, B. & Q.R. Co. v. Chicago,* 166 U.S. 226, 236 (1897)).
[88] *See New Orleans Public Service v. City of New Orleans*, 281 U.S. 682, 687 (1930) ("It is elementary that enforcement of uncompensated obedience to a regulation passed in the legitimate exertion of the police power is not a taking of property without due process of law.").

The City first argues that whether the Plaintiffs' property interest is protected depends on whether that interest is "fundamental."[89] Certain fundamental rights, even though not enumerated in the Constitution, are considered so important they cannot be infringed without a compelling reason no matter how much process is given. Claims for violation of such unenumerated rights are based on substantive due process under the Fourteenth Amendment and require proof that a fundamental liberty interest has been infringed.[90] Plaintiffs have not made a Fourteenth Amendment substantive due process claim in this action.  Instead, Plaintiffs claim a taking in violation of the Takings Clause of the Fifth Amendment incorporated into and made applicable to the states through the Due Process Clause of the Fourteenth Amendment. To prevail on their takings claim, the Plaintiffs must demonstrate only that they have a protectable property interest.[91]

The first component of the Takings Clause requires the property alleged to have been taken constitute "private property." The Supreme Court has held that while the meaning of "property" as used in the Fifth Amendment is a federal question, state law will define the range of interests that qualify for protection as "property" under the Fifth and Fourteenth Amendments.[92]  The right to ownership of money is a recognized property interest under Louisiana law.[93] The Plaintiffs have alleged the City refused to refund their private property to them. The Plaintiffs have alleged a taking of their private property.

---

[89] R. Doc. 41-1 at 7. The Court notes the City recognized Plaintiffs had to demonstrate a "protectable property interest" in that same memorandum. R. Doc. 41-1 at 5.

[90] *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

[91] *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 269 (5th Cir. Dec. 18, 2012).

[92] *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1030 (1992) (citing *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972)).

[93] Plaintiffs cite LA. CONST. art. I, § 4 and *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 172 (1992) for the proposition that money is private property. R. Doc. 44 at 10. *Phillips* recognized that funds held in an account may be private property. *See also* La. Civ. C. art. 536 ("Consumable things are those that cannot be used without being expended or consumed, . . . such as money. . ."); La. Civ. C. art. 477 ("Ownership is the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law.").

The second component of the Takings Clause requires that the private property must have been "taken for public use." The Supreme Court has consistently interpreted the "public use" requirement loosely, and this component is not seriously contested in this case. The City does not seriously contest that whatever was "taken" was taken for a public use. In fact, the City argues the collection of the fines and fees was done in the exercise of its police power "for promotion of general health, safety, welfare, and morals."[94] The City further explains its collection of fines and fees served a legitimate regulatory purpose under its police power—"to promote the City's significant interest in creating safer streets."[95] The City now argues its refund of the Plaintiffs' property would have made those funds "unavailable for other purposes, such as public health and public safety expenditures."[96] It is clear the private property was taken for a public purpose.

The City argues the Plaintiffs are not making a takings claim and, instead, are merely attempting to enforce a state court "money judgment."[97] The Plaintiffs rely on Fifth Circuit precedent to support their claim. In *Vogt v. Bd. of Comm'rs of the Orleans Levee Dist.,*[98] landowners brought a § 1983 action in federal court[99] against the Board of Commissioners of the Orleans Levee District alleging the Board's refusal to pay a state court judgment arising from the District's wrongful retention of mineral royalties, after land acquired by the District was returned to its owners pursuant to statute, constituted an unconstitutional taking. The state court judgment ordered the Board to return nearly

---

[94] R. Doc. 41-1 at 9 (quoting *New Orleans Campaign for a Living Wage v. City of New* Orleans, 825 So.2d 1098, 1104 (La. 2002)).

[95] R. Doc. 47 at 7.

[96] R. Doc. 41-1 at 1.

[97] *Id.* at 13.

[98] *Vogt v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 294 F.3d 684 (5th Cir. 2002).

[99] *See* Pls' Motion for Partial Summary Judgment, *Vogt v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, Civ. No. 00-2195 (E.D. La. July 29, 2002), R. Doc. 20 at 12 n.2 ("A typographical error in the Complaint that alleges the ground for relief in this case is 42 U.S.C. 1985, instead of 1983 *et seq*, is of no consequence.").

$2.85 million in mineral royalties attributable to lands belonging to the landowners. The Board refused to satisfy the judgment. The landowners sought a writ of seizure, which was denied because Article XII, Section 10(C) of the Louisiana Constitution provides that property of the state, a state agency, or political subdivision is not subject to seizure. The Louisiana Court of Appeals affirmed the trial court's orders denying the petitions for writs of mandamus and seizure.[100] The landowners then filed a § 1983 action in federal court claiming the Levee Board's failure to pay the judgment was an unconstitutional taking of their property without just compensation.

The federal district court in *Vogt* dismissed the landowners' constitutional takings claim for failure to state a cause of action.[101] The Fifth Circuit reversed finding the landowners' pleadings stated a takings claim and remanding the case for resolution on the merits. The City argues *Vogt* is not applicable because in this case the City was exercising its police power and not its right to eminent domain when it fined Plaintiffs under the ATES program.[102] The fact that *Vogt* involved eminent domain and this case involves the exercise of police power is not determinative.

In *Vogt,* the Fifth Circuit specifically addressed the Levee Board's premise that the landowners' suit was not a takings claim but merely an attempt to execute the judgment of the state courts:

> The levee board's attorney began his presentation at oral argument by saying, "I think it's clear this is not a takings case." The levee board argued in its motion to dismiss and in its brief on appeal that the landowners' "property"—in the form of a judgment enforceable "through the processes set forth by the legislature"—has not been taken and that the landowners' putative takings claim is nothing more than a suit to enforce a judgment against the board. If the landowners ultimately prevail, the levee board

---

[100] *Vogt v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 814 So.2d 648 (La. App. 4 Cir. Mar. 27, 2002).
[101] *Vogt*, Civ. No. 00-3195, 2001 WL 664580 at *4 (E.D. La. June 12, 2001).
[102] R. Doc. 41-1 at 3.

continues, then every judgment creditor of a political entity is a potential plaintiff in a takings claim.

The landowners, on the other hand, emphasize that the right to receive mineral royalties is a recognized property interest under Louisiana law and that there is no longer any doubt as to ownership of the disputed royalties. As the state court judgments made clear, the landowners' interests in $2.85 million in royalties were settled by the passage of Act 233, and their claims for the property have since been reduced to judgment. According to the landowners, the levee board's refusal to satisfy the judgment and pay over the retained royalties constitutes a taking because the governmental entity is withholding private property from its owners, without offering compensation and without asserting a public purpose or any police power or other reasonable regulatory justification for the action.

The only point requiring resolution at this stage is the levee board's insistence that the landowners' suit is not a takings claim but merely an attempt to execute the judgment of the state courts. We find no support for the levee board's premise that a decree of the Louisiana courts somehow converted private property (the mineral royalties) into public funds subject to an unenforceable lien. *Cf. Webb's Fabulous Pharmacies,* 449 U.S. at 163–64, 101 S.Ct. at 452 ("[A] State, by *ipse dixit,* may not transform private property into public property without compensation."). In the levee board's view, the state courts' holding that the landowners' judgment is unenforceable against the levee board effectively re-characterizes their property right in mineral royalties into an intangible claim against the levee board's property. What was the landowners' property has suddenly vanished behind a veil of sovereign immunity in state court. We hold, however, that this result is untenable against a federal takings claim.[103]

In *Vogt* the taking was the Levee Board's refusal to return to the landowners' their private property in the form of mineral royalties. In this case, the taking was the City's refusal to return to the Plaintiffs their private property in the form of a refund. Both *Vogt* and this case involve the government's refusal to return private property to its rightful owner. Louisiana law cannot convert the Plaintiffs' private property in the form of a refund into public property without just compensation. As the Fifth Circuit explained in

---

[103] *Vogt*, 814 So.2d at 696-97 (citations omitted).

Vogt, what was the Plaintiffs' property, the refund, cannot be converted into public funds subject to an unenforceable lien.

Furthermore, a comparison of the McMahon judgment and the claim made in this case makes it is clear the Plaintiffs are not merely seeking to enforce the McMahon judgment. In the McMahon judgment, the state trial court granted Plaintiffs' motion for partial summary judgment in favor of Subclass 1 finding the City had no legal authority to enforce ATES before November 4, 2010 and the City's collection of fines and fees from January 1, 2008 through November 3, 2010 was not permitted by law.[104] In his oral reasons for judgment, the state trial court held the ATES ordinance "never existed in a valid form until November 4, 2010" and the Plaintiffs were entitled to relief in the form of the return of the money collected under the invalid ordinance.[105] The state trial court ordered the City to "immediately refund to the Class Plaintiffs Subclass 1 all ATES fines and fees paid."[106] The trial court relied on the Louisiana Fourth Circuit Court of Appeal's 2013 decision in which the Fourth Circuit held the Plaintiffs had "acquired a cause of action to seek redress for the 'illegal' enforcement of the Ordinance by the DPW."[107] The Fourth Circuit affirmed the trial court's judgment on September 4, 2019, and held the order compelling immediate return of the money collected was correct.[108]  The McMahon action was not based on a violation of the Fifth Amendment to the U.S. Constitution.

The claim made in this case is based on the City's violation of the Plaintiffs' Fifth Amendment right not to have their private property taken without just compensation.

---

[104] R. Doc. 37-1 at 1-2.
[105] Attachment B at 23:1-11.
[106] *Id.*
[107] *McMahon v. City of New Orleans*, 2013 WL 6925013 (La. App. Dec. 18, 2013), *writ denied*, 135 So.3d 622 (La. 2014).
[108] *Id.* at 2; R. Doc. 37-2.

The sole claim brought by Plaintiffs in this action is that the City has unconstitutionally taken their property in violation of the Fifth Amendment by refusing to return their money upon the LASC's denial of writ on the McMahon judgment.[109] Plaintiffs are seeking a federal judgment for violation of the Fifth Amendment and not the enforcement of the McMahon judgment.[110]

It is true the Fifth Circuit did not hold, or imply, that every tort or breach of contract case against a governmental entity necessarily becomes a takings claim. Instead, the "holding extends only to cases where, as in *Webb's,* the government has forcibly appropriated private property without a claim of right or of public or regulatory purpose."[111] Plaintiffs are seeking a return of fines collected by the City after the ATES program was found to be a nullity.

The Fifth Circuit revisited *Vogt* in *Haspel & Davis Milling & Planting Co., Ltd.*[112] In *Haspel*, the landowners asserted a takings claim in state court based on withheld mineral royalties and, rather than litigating their claims, as the landowners in *Vogt* did, entered into a comprehensive settlement agreement to "compromise" and "settle all claims," which encompassed their takings claim against the levee Bboard. The Fifth Circuit distinguished this case from *Vogt* concluding that "by entering into the Settlement Agreement, the landowners compromised their takings claim against the Levee Board, and thus, extinguished any takings claim they have had had, [and] the landowners' only recourse is to enforce their rights under the Settlement Agreement and Consent Judgment."[113] The Fifth Circuit did not in *Haspel* or otherwise limit or repudiate *Vogt* and

---

[109] R. Doc. 44 at 20.
[110] R. Doc. 37 at 3-4.
[111] *Id.*
[112] 493 F.3d 570 (5th Cir. July 23, 2007).
[113] *Id.* at 576-77.

there is no reason to believe *Vogt* is not good law. In this case, there has been no settlement agreement or consent judgment, and the ruling in *Haspel* does not preclude the Plaintiffs' Fifth Amendment claim. The Fifth Circuit's opinion in *Vogt* convinces the Court the Plaintiffs have made a Fifth Amendment takings claim under § 1983 in their First Supplemental and Amending Complaint and the City's motion to dismiss must be denied.

## V.     There is a federal interest in the Plaintiffs' remedy.

As the parties correctly note, Article XII, § 10(C) of the Louisiana Constitution provides no judgment against the state, a state agency, or a political subdivision shall be payable or paid "except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered."[114] Nevertheless, the Fifth Circuit has stated that "when there is a federal interest in the remedy, [federal courts] may trump a state's anti-seizure provision and enforce a money judgment against a public entity."[115]

As Judge Africk explained in a 2015 opinion:

> A federal interest is sometimes obvious, such as in civil rights actions. *E.g., Bowman v. City of New Orleans*, 914 F.2d 711 (5th Cir. 1990) (permitting the enforcement of a money judgment against the City under 42 U.S.C. § 1988); *Gates v. Collier*, 616 F.2d 1268 (5th Cir. 1980) (same). The Fifth Circuit has also recognized, however, that a federal interest can exist even in a diversity lawsuit under certain circumstances. In *Freeman*, for example, the Fifth Circuit recognized a sufficient federal interest "when a state makes abundantly clear that it will never satisfy the judgment." 352 F. App'x at 923 (citing *Gates*, 616 F.2d at 1271). Furthermore, the Fifth Circuit has indicated in dicta that the failure of a governmental entity to satisfy a judgment could, in some circumstances, amount to a violation of the Takings Clause of the U.S. Constitution, which would give rise to a sufficient federal interest to overcome a state anti-seizure provision. *Vogt v. Bd. of*

---

[114] LA. CONST. art. XII, § 10(C).
[115] *Freeman Decorating Co. v. Encuentro Las Americas Trade Corp.*, 352 F. App'x 921, 923 (5th Cir. Nov. 5, 2009) (not designated for publication) (citing *Specialty Health Mgmt., Inc. v. St. Mary Hosp.*, 220 F.3d 650, 653 (5th Cir. July 31, 2000).

*Comm'rs of the Orleans Levee Dist.*, 294 F.3d 684, 697 (5th Cir. 2002). When no federal interest in the remedy exists, however, the Fifth Circuit has refused to order the seizure of public property. *Freeman*, 352 F. App'x at 923.[116]

That a federal interest exists in this civil rights action is obvious. An action to enforce a violation of rights under the Takings Clause of the Fifth Amendment is an action under Title 42 of the United States Code.  Chapter 21 of Title 42, captioned "Civil Rights," includes 42 U.S.C. § 1983. 42 U.S.C. § 1988, known as the Civil Rights Attorney's Fees Award Act of 1976, relates to proceeding "in vindication of civil rights" and includes § 1983 in the list of actions in which the prevailing party is entitled to attorney's fees.[117] The federal interest in the remedy for a Fifth Amendment violation trumps Louisiana's anti-seizure provision.

## CONCLUSION

**IT IS ORDERED** that the City's Motion to Dismiss First Amended Complaint Pursuant to Rule 12(b)(6) for Failure to State a Claim upon which Relief May be Granted is **DENIED**.[118]

**New Orleans, Louisiana, this 9th day of March, 2021.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[116] *Benson v. Reg'l Transit Auth.,* Civ. No. 05-2777, 2015 WL 5321685 at *2 (E.D. La. Sept. 10, 2015) (quoting *Freeman,* 352 App'x. at 923).
[117] Fed. R. Civ. P. 69 permits the recovery of attorney's fees "against States notwithstanding a state proscription against the seizure of public funds." *Gary W. v. State of La.*, 441 F.Supp. 1121, 1127 (E.D. La. Oct. 31, 1977), *affirmed* 622 F.2d 804 (5th Cir. July 31, 1980), *cert. denied* (U.S. 1981).
[118] The City's request for oral argument is **DENIED AS MOOT**. R. Doc. 42.